to vacate this order at a special term of the supreme court as being irregular, illegal, and improper, the chief ground being that the affidavit upon which the order was granted was insufficient, it being made upon information and belief, without stating the sources of the same. This motion was denied, and later on the appellant applied to the same special term, and moved to vacate the order of the county judge, or for a modification thereof to relieve the appellant from the injunction portion of the order, so that she could dispose of certain property which she claimed it was necessary to sell. This motion was denied, and appeal is taken from both orders.

The affidavit of the judgment creditor is the only foundation for the proceeding against the appellant as a third person claimed to have property of the judgment debtor. The jurisdictional facts required by section 2441 of the Code of Civil Procedure, which authorizes the issuing of an order where a "person or corporation has personal property of the judgment debtor exceeding ten dollars in value, or is indebted to him in a sum exceeding ten dollars," are only stated in the affidavit upon information and belief. This is irregular and insufficient unless the sources of the information and belief appear in the affidavit, so that the court may judge of the sufficiency and strength of the belief of the affiant. This is a general rule pertaining to all affidavits upon which it is sought to obtain attachment, injunction, and other important orders, and is applicable to proceedings supplementary to execution. Fleming v. Tourgee (Sup.) 16 N. Y. Supp. 2, affirmed (N. Y. Ct. App.) 32 N. E. 1015; Ammon v. Kellar, 21 Misc. Rep. 442, 47 N. Y. Supp. 595; Mowry v. Sanborn, 65 N. Y. 583, 584; Bank v. Alberger, 78 N. Y. 252; Roderigas v. Savings Inst., 76 N. Y. 323. The order being granted upon an insufficient affidavit, the special term should have vacated it, and it follows from that that the second order falls with it. We do not hold that the order was void. It probably should have been obeyed by Mrs. Parish until it was vacated.

We think both orders should be reversed, with costs in the first case of $10 and disbursements. All concur, except ADAMS, J., not voting.

---

(22 Misc. Rep. 471.)

SIMON v. LONG ISLAND MUT. FIRE INS. CO.

(Supreme Court, Special Term, Oneida County. January, 1898.)

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DILIGENCE.

     An insurer did not use such diligence as to be entitled to a new trial for the newly-discovered evidence that the seller of the insured property to insured did not receive as much for it as insured testified he paid for it, where insurer had ample opportunity before the close of the trial to interview the seller.

2. SAME—CHARACTER OF EVIDENCE.

     Where, in an action to recover the insurance on burned tobacco, insurer introduced evidence that it was worth 45 cents per pound, and testified that he thought he paid that much for it, newly-discovered evidence that he paid only 15 cents per pound is not decisive of the case, so as to entitle defendant to a new trial.

Action by Harry Simon against the Long Island Mutual Fire Insurance Company. Verdict for plaintiff, and defendant moves for a new trial on the ground of newly-discovered evidence. Denied.

A. H. Sawyer, for the motion.

G. W. Rayhill, opposed.

McLENNAN, J. This action was brought to recover upon a policy of insurance for $2,000 issued by the defendant upon the 11th day of May, 1895, upon a quantity of tobacco owned by the plaintiff. The policy was one of a series of policies issued by various insurance companies, and amounting in the aggregate to something like $26,000. On the 18th day of August, 1895, the tobacco so insured was destroyed by fire, and the plaintiff claimed that its value was at least the entire amount of insurance. An action was brought upon each of the policies against the respective insurance companies. This action came on to be tried before the court and a jury on the 12th day of May, 1897. By the pleadings, and at the very outset of the trial, it appeared that the defense was, in substance, that the fire was of incendiary origin; that the plaintiff and his two brothers, Philip and Jacob Simon, had entered into a conspiracy to cheat and defraud the defendant and the other insurance companies; that the loss of the plaintiff on account of the fire was comparatively slight; that the tobacco, if any, which was destroyed, was of little value, and that very much less of the tobacco was burned than was claimed; and that much of the tobacco which had been stored in the building was removed previous to the time of the fire. This line of defense was clearly indicated at the very outset of the trial. It appeared that soon after the fire the plaintiff prepared proofs of loss, which were served upon the defendant, and that they were rejected by it as not being in compliance with the terms of the policy. In such proofs of loss it was stated from whom the plaintiff claimed to have purchased all the tobacco which he claimed was destroyed by fire, and which was covered by the several policies of insurance, and it was stated that 53 cases of the tobacco destroyed were purchased by the plaintiff from his brother Jacob Simon. Such proofs of loss purported to give the number of each case of tobacco destroyed, the weight, tare, etc. The plaintiff and his brothers, Philip and Jacob, resided at the city of Utica at the time of the trial, and for many years prior thereto. The plaintiff was sworn as a witness in his own behalf. His brother Philip was also sworn, and other witnesses gave evidence tending to establish the plaintiff's cause of action. The plaintiff and his brother were cross-examined at great length. They were asked where their brother Jacob was, and they answered that he was in the city of Utica. Such cross-examination clearly indicated that the theory of the defendant was that the purchase by the plaintiff from Jacob was simply a blind, and that the plaintiff was the real purchaser of the 53 cases of tobacco. After the plaintiff rested, the defendant submitted proof tending to establish its cause of action, and rested. The plaintiff then, upon rebuttal, and to explain away any suspicions that might have arisen by not putting Jacob upon the

stand, called him as a witness. Upon his cross-examination he (Jacob) was asked from whom he purchased the tobacco in question. This was upon Monday, the 17th day of May, 1897. Jacob answered that he purchased the same from Julius Marqusee, who resided at Syracuse, N. Y.; and he then said that he did not remember or know how much he paid for the tobacco, but finally said that he paid 40 or 50 cents a pound. The evidence was closed on the said 17th day of May, 1897, and on the following morning the case was summed up by the respective counsel, and submitted to the jury. The jury rendered a verdict in favor of the plaintiff for the full amount of the policy.

The counsel for the defendant resided in Syracuse, where Julius Marqusee resided. Several persons interested in the defendant, and who were engaged in preparing the case for trial for the defendant, also resided in the city of Syracuse, and they and the counsel for the defendant went to and from Syracuse at the close of each day during the trial. Soon after the trial some one on behalf of the defendant interviewed Mr. Julius Marqusee, in Syracuse, and ascertained from him that Jacob Simon had not paid 40 or 50 cents a pound for the 53 cases of tobacco purchased from him, but that in fact he only paid 15 cents a pound. This motion for a new trial is upon the ground that it would have been important to the defendant to have shown that fact upon the trial; that it discovered such fact after the trial; and it insists that, with such fact before the jury, the result of the trial would have been favorable to the defendant. It is well settled that, in order to succeed upon a motion of this kind, it is incumbent upon the moving party to establish that he could not have obtained the alleged newly-discovered evidence, by reasonable diligence, prior to the trial. In this case, as before stated, the defendant was informed by the proofs of loss submitted by the plaintiff long before the commencement of the action that he claimed to have purchased the tobacco in question from his brother Jacob. It was known by the defendant where Jacob resided. On the first day of the trial the defendant was informed that Jacob was then in the city of Utica. Defendant could have called him to the witness stand, and learned from whom he purchased the tobacco in question, if it was deemed important. But, in addition, the whole case would seem to indicate that the defendant knew from whom Jacob claimed to have purchased the tobacco, and evidently it was not thought useful to ascertain the true facts in the case until after the trial had closed. As appears by the record, the name of Julius Marqusee was frequently mentioned. It was alleged that he had sold direct to the plaintiff a considerable amount of the tobacco in dispute, and it would seem that under all the circumstances ordinary diligence would have suggested that Julius Marqusee be interviewed, and the facts which he knew in regard to the matter ascertained. But in addition, however, it was distinctly sworn to by Jacob on the morning of the 17th of May that he purchased the tobacco in question from Julius Marqusee. There was ample time to have communicated with Marqusee, and procured his attendance as a witness. Strictly, in a case of this

kind, what Julius paid to Marqusee for the tobacco would be of no consequence; but the issues in this action were such that it undoubtedly would have been competent proof in the case, which was known to defendant's counsel at the time. No effort was made to inquire of Julius Marqusee personally or by telephone, although only 50 miles distant from Utica, whether what Jacob testified to on the morning of the 17th day of May was correct or otherwise. If he had been brought to Utica during any part of May 17th, or upon the morning of the 18th, his evidence could have been given. No attempt was made to investigate as to where Jacob procured the 53 cases of tobacco, and how much he paid for it, although, as before stated, the principal defense of the defendant was to show that the value of the property destroyed was not equal to the amount which was claimed by the plaintiff. Another rule equally well settled is that the evidence sought to be given must be of such character as would be decisive of the case, or such as to enable the court to say that, if such evidence had been given, the result would probably have been different. Upon the whole case I cannot conclude that, if the evidence in question had been given upon the trial, such would have been the result. Jacob did not state with any degree of positiveness what he paid to Julius Marqusee for the tobacco. First, he said he did not know. He then said that he thought it was 40 or 50 cents a pound. He stated, and the other witnesses called by the plaintiff testified, that the value of the tobacco purchased was 45 cents a pound. Of course, if it was, it was immaterial what he paid for it. It would seem that, if a new trial could be granted under the circumstances presented here, a new trial could be obtained in almost every case where, through some error or oversight, one of the parties failed to produce evidence which, in the light of knowledge subsequently gained, would possibly have changed the result. Such is not the rule, and a new trial should not be granted in any case upon the ground of newly-discovered evidence unless the party has brought himself within the spirit, at least, of the well-established rules governing such applications.

It follows that the motion for a new trial should be denied, with $10 costs to the plaintiff. Order may be entered accordingly. Ordered accordingly.